**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**HENRY A. DURDIN, JR.,**

     **Petitioner,**

 **v.**                              **Case No. 2:16-cv-355**

**WARDEN, MANSFIELD CORRECTIONAL**    **JUDGE ALGENON L. MARBLEY**
    **INSTITUTION,**                        **Magistrate Judge Kemp**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, Henry A. Durdin, Jr., an inmate at Mansfield Correctional Institution ("MCI"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 3) and the Respondent's return of writ (Doc. 7). Petitioner has not filed a traverse. For the foregoing reasons, it will be recommended that the petition be **DENIED** and this case be **DISMISSED**.

### I. Factual Background

The facts of the case are summarized by the Franklin County, Ohio, Court of Appeals:

> {¶ 3} In the early morning hours of May 23, 2013, the victim called her sister, Patricia Daniels. Ms. Daniels testified that she was asleep and the phone call woke her up. Ms. Daniels stated that the victim was "screaming in the phone, sobbing in the phone, just like—she was so upset, and she said [defendant]," who was the victim's ex-husband, "had raped her." (Tr. 39.) The victim told her sister that she was on her way to the hospital because she had been "raped and duct taped" and defendant "did it ." (Tr. 40–41.) The victim also told her sister that defendant "had her gun," and Ms. Daniels said her sister was "afraid" because defendant "had taken [the victim's] gun from her." (Tr. 41.) The victim did not testify at trial.

{¶ 4} Lindsey McNichols, a Sexual Assault Nurse Examiner ("SANE") who interviewed the victim at The Ohio State University Hospital East, did testify at trial. The SANE nurse stated that the victim arrived at the hospital at 1:00 a.m. on May 23, 2013. The general emergency room staff took a general medical history and did an assessment of the victim's immediate medical needs. The victim then spoke with Detective David Bobbitt, a detective with the sexual assault unit of the Columbus Police Department. After speaking with the detective, the victim met with the SANE nurse at 3:10 a.m. (State's exhibit E.)

{¶ 5} The SANE nurse explained that she had received "special training in how to care for a sexual assault patient, how to do the exam on evidence collection, and maintaining chain of custody." (Tr. 47.) The SANE nurse stated that she has performed between 40 to 50 sexual assault examinations since becoming qualified as a SANE nurse in 2010. The victim informed the SANE nurse that she had been raped, and identified defendant as her assailant. The SANE nurse related the victim's narrative history of the incident, stating:

> She was grabbed by her hair and hit on the right side of her face with a fist, and then hit on the left side, and then dragged and put on her stomach. Tied her hands and feet with shoestrings. And then she said that there was a gun involved and the safety was taken off the gun and there was sex. And that her hands and feet were untied during that time. But after that, she was able to shower but then duct taped. She said that she was duct taped by her hands, legs, and then around her mouth. And after that, she said that the tape was yanked off of her face because she was trying to talk and wasn't able to be heard. And then she said that she faked like something was wrong with her heart, and she was told to take two of her anxiety pills and given those. And after that, she was given something to eat. And then said that she was able to become free and convinced her assailant to go get some mental health care and she drove him there and then came to the hospital.

> (Tr. 61–62.)

{¶ 6} In examining the victim, the SANE nurse discovered "two abrasions to her left cheek," as well as "abrasions and swelling to her lower lip mainly on the left side. * * * And then she had on both of her wrists, she had some purple areas with abrasions that were kind of reddened." (Tr.

66.) The nurse also noted a thin white discharge coming out of the victim's vaginal vault. The SANE nurse explained that she had been trained on how to collect evidence for the "sexual assault evidence collection kit" issued by the Ohio Department of Health. (Tr. 81.) The SANE nurse took a swabbing of the white discharge, and swabbed other areas of the victim's body and clothing for the evidence collection kit. Forensic DNA testing conducted on the items in the kit revealed that the victim's vagina and underwear contained semen, and the semen yielded a DNA profile consistent with both defendant and the victim.

{¶ 7} Detective Bobbitt testified that he was already at the hospital investigating an unrelated case when a nurse informed him about this case. The detective interviewed the victim at the hospital, and the victim indicated that she had dropped defendant off at a mental health care facility on her way to the hospital. After speaking with the victim, the detective went to the mental health care facility, and the staff at the facility informed the detective that defendant had left the facility 45 minutes before the detective arrived. Detective Bobbitt then went to the victim's apartment to look for "some specific pieces of evidence." (Tr. 103 .) Detective Bobbitt discovered "white shoelaces * * * tied in knots, the same with the black shoelaces, and * * * strands of duct tape, wrinkled duct tape" in a trash can at the apartment. (Tr. 110.) DNA material from both defendant and the victim was present on the shoestrings and the duct tape. Detective Bobbitt indicated that, although he searched for a gun at the victim's apartment, he did not find one.

{¶ 8} Officers apprehended defendant the following morning. Defendant did not have a gun on him when he was apprehended. Detective Bobbitt testified that he listened to a phone call defendant had made to the victim while in jail. In the recorded phone conversation, which was played for the jury, the victim says, "I begged you not to do it," and the defendant responds saying "it wasn't me, it was the devil." (Tr. 122.)

{¶ 9} Defendant testified in his own defense. Defendant admitted that he had a prior domestic violence conviction against the victim from 2010, and that he had a prior robbery conviction from 2004. Defendant explained that, the day prior to the incident, he had consensual sex with the victim, "and then that's when the duct tape and shoestrings came into the play," as their consensual sex involved "role playing, bondage and stuff like that." (Tr. 173 .) Defendant stated that he and the victim "had lots of threesomes and bondages" over the course of their relationship. (Tr. 175.)

3

Defendant explained that the morning after they had consensual sex, the victim woke up and "she wanted the rent money and, you know, the light bill money, and [as he] already spent it on heroin, she got mad and we got into it, we started fighting and arguing real bad ." (Tr. 174.) Defendant admitted that he "hit her, [he] spit on her, [he] pulled her hair and [he] slapped her" as the couple fought. (Tr. 176.) Defendant testified that the victim dropped him off at the mental health care facility later that evening, because she said he needed help. Defendant stated that he "did not rape" the victim, that he did not see a gun at the victim's house, and that he never possessed a gun. (Tr. 175.) Defendant stated that he believed the victim "owned a pellet gun," but not a real gun. (Tr. 175.)

(Doc. 7, Ex. 15); *State v. Durdin,* 2014 WL 7462990, at *1-*3 (Franklin Cty. Dec. 30, 2014).

The factual narratives set out by the state court are presumed to be correct. 28 U.S.C. §2254(e)(1).

## II. Procedural History

### A. Trial Court Proceedings

Petitioner was indicted by the Franklin County Grand Jury on May 31, 2013, charging him with one count of kidnapping (O.R.C. §2905.01) with a firearm specification; one count of rape (O.R.C. §2907.02) with a firearm specification and a sexually violent predator specification; one count of aggravated robbery (O.R.C. §2911.01) with a firearm specification; one count of domestic violence (O.R.C. §2919.25) with a firearm specification; and one count of possessing a weapon under a disability (O.R.C. §2923.13). (Doc. 7, Ex. 1). Petitioner pleaded not guilty to the charges.

During the pretrial proceedings, Petitioner filed two motions *in limine* to exclude alleged hearsay testimony from Patricia Daniels, the victim's sister, and from Lindsay McNichols, the SANE nurse. Rather than rule pretrial, the court took the motions under

advisement and indicated that it would respond to any objections made during trial. (Tr. at 16-20). The State had filed a motion to depose the victim, but the motion was withdrawn on the day of the trial and no deposition occurred. (Doc. 7, Ex. 3; Tr. 20-21). Objections to the SANE nurse's testimony during trial were overruled, and the victim's sister testified without objection. (Tr. 60-61; 36-44). After the state rested its case, and again after the defense rested its case, Petitioner unsuccessfully moved for acquittal under Rule 29. (Tr. 165, 183). The jury found Petitioner guilty of all counts and specifications. (Doc. 7, Ex. 4).

On March 18, 2014, Petitioner was sentenced to twenty years to life imprisonment. The sentencing entry provides, in pertinent part, as follows:

> For purposes of sentencing Counts One and Three merge and the Defendant is sentenced to Three (3) years on Count Three with an additional, consecutive Three (3) years as to the firearm specification; Eleven (11) years to Life as to Count Two, this is with the specification finding that the Defendant is a sexually violent predator (life tail), and with an additional, consecutive Three (3) years as to the firearm specification; Eighteen (18) months as to Count Four; and Two (2) years as to Count Five at the Ohio Department of Rehabilitation and Correction. Counts Four and Five to be served concurrently with each other and to other counts. Count Two and Count Three to be served consecutively to each other and to all specifications. Total incarceration is Twenty (20) years to life.

(Doc. 7, Ex. 5).

## B. Direct Appeal

Petitioner timely appealed his conviction (Doc. 7, Ex. 9-10), raising the following assignments of error:

1.    The trial court violated Defendant–Appellant's rights to due process and a fair trial when in the absence of sufficient evidence and against the manifest weight of the evidence the trial court found Defendant–Appellant guilty of rape, kidnapping with sexually violent predator specification, aggravated robbery, having a weapon while under disability, and firearm specifications.

2.    The trial court erred in denying Defendant–Appellant's Motion in Limine when the victim's statements to medical personnel, contained in her medical records, were testimonial and not admissible under Evid. R. 803(4).

On December 30, 2014, the Court of Appeals sustained Petitioner's second assignment of error, and sustained in part and overruled in part Petitioner's first assignment of error.  The court found that the trial court erred in admitting testimony of the SANE nurse recounting the victim's belief that Petitioner had taken her gun.  The Court found that the record contained sufficient evidence to convict Petitioner of possessing a firearm under a disability, but did not contain sufficient evidence to support the aggravated robbery conviction or the firearm specifications attached to the aggravated robbery and rape charge.  Accordingly, Petitioner's case was remanded to the Franklin County Court of Common Pleas.  (Tr. 7, Ex. 15-16); *Durdin, supra,* 2014 WL 7462990.

On February 25, 2015, an application to re-open Petitioner's appeal pursuant to Ohio App. R. 26(B) was filed.  (Doc. 7, Ex. 17).  Petitioner later sent a letter to Clerk of the Court of Appeals requesting that the application be removed from the record because it was forged and filed without his consent.  The court construed the letter as a motion to dismiss the application, which it granted. (Doc. 7, Ex. 19).

6

**C. Motion for Production of Transcripts**

On November 4, 2014, while his appeal was pending, Petitioner filed a motion for production of transcripts, which was opposed by the State. (Doc. 7, Ex. 12-13). The motion was denied on November 25, 2014. (Doc. 7, Ex. 14).

**D. Appeal to the Ohio Supreme Court**

With respect to the convictions that were affirmed on direct appeal, Petitioner filed a *pro se* appeal to the Ohio Supreme Court (Doc. 20-21), raising the following propositions of law:

I.     Mr. Durdin's convictions for rape, kidnapping, having a weapon under disability, and a sexually violent predator specification are not supported by the manifest weight or sufficiency of the evidence, and violated his 5th, 6th and 14th Amendment rights under the U.S. Constitution.

II.    Ineffective assistance of appellate counsel:

Trial counsel was ineffective for not cross-examining the State's witnesses at all, or inadequately questioning them. Trial counsel was ineffective for not objecting to the State's presentation of only ten seconds of the recorded call between Mr. and Ms. Durdin.

III.   The trial court erred when it allowed the State to elicit testimony about the defendant's previous arrests. Those charges did not lead to a conviction for a sexual offense, and prejudiced the defendant. The introduction of this evidence violated the defendant's rights under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution.

IV.   The repeated testimony by the state's witnesses rendered the trial fundamentally unfair by introducing inadmissible hearsay about the alleged presence of a firearm.

> V.      The prosecutor's closing arguments were meant to inflame the emotions of the jury and mislead them.
>
> VI.      The trial court erred by allowing Patricia Daniels' hearsay testimony since the alleged victim was never determined to be unavailable at trial.

On May 20, 2015, the Ohio Supreme Court declined to accept jurisdiction.  (Doc. 7, Ex. 23).

## E.  Proceedings on Remand

While awaiting re-sentencing, Petitioner moved for full discovery and the State opposed the motion (Doc. 7, Ex 24-25).  The trial court did not rule on that motion.  On March 31, 2015, Petitioner went before the trial court for re-sentencing pursuant to the decision of the Court of Appeals.  He was sentenced to three years in prison for kidnapping; 11 years to life for rape; 18 months for domestic violence; and two years for possessing a weapon under a disability.  The sentences for domestic violence and possessing a weapon under a disability were again to be served concurrently with each other and the other sentences.  The sentences for kidnapping and rape were to run consecutively, resulting in an aggregate sentence of 14 years to life. (Doc. 7, Ex. 26).

On April 20, 2015, Petitioner filed a *pro se* notice of appeal.  (Doc. 7, Ex. 27).  The appeal was dismissed by the appellate court *sua sponte* on June 23, 2015 because Petitioner did not file a brief. (Doc. 7, Ex. 28).  Petitioner did not appeal to the Ohio Supreme Court.

## F.  Application to Re-open Appeal

On May 4, 2015, Petitioner filed a *pro se* application for re-opening of his appeal pursuant to Ohio App. R. 26(B) (Doc. 7, Ex. 29), raising the following grounds:

1.  Defense counsel was ineffective for not objecting to the hearsay testimony of Detective Bobbitt and the hearsay testimony of the alleged victim's sister Patricia Daniels. Both testimonies were testimonial cause [*sic*] the victim did not testify or provide any testimony and the alleged victim was never determined to be unavailable by the court, and it violated his 6th and 14th Amendment rights under the U.S. Constitution and under the Confrontation Clause and under *Crawford v Washington,* 541 U.S. 36 (2004).

2.  Defense counsel was ineffective for not renewing the defendant's motion in limine when the alleged victim's sister got on the stand to testify her testimony was testimonial. It was all hearsay and it violated the defendant's rights under the U.S. Constitution the Confrontation Clause and under *Crawford v Washington,* 541 U.S. 36 (2004).

3.  Defendant was denied due process of law and a fair trial when the prosecutor cross-examined the defendant in an improper and abusive manner and how the prosecutor told the jury in closing statements how the defendant raped and terrorized the victim with a gun. The Tenth District Court of Appeals said when the nurse testified about a gun it violated my rights so when the prosecutor told the jury about the gun it violated the defendant's rights.

4.  The Tenth District Court of Appeals rendered a decision on my appeal (14AP-249) December 30, 2014. One of my assignments of error was, the trial court erred in denying Appellant's Motion in Limine when the victim's statements to medical personnel, contained in her medical records, were not admissible under Evid.R. 803(4). The victim was never determined to be unavailable before trial, so it is all testimonial and inadmissible per *Crawford*. The Tenth District Court of Appeals said when the victim told the nurse about the gun it was testimonial cause [*sic*] the victim would have reason to believe the statement would be available for use at a later trial and the rest of her statement was non testimonial cause [*sic*] she did not think it would be used at a later trial. *Crawford*

states, statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. [*sic*] If she knew the statement about the gun would be used at a later trial, she knew her whole statement would be used. *Crawford* does not say half and half. Either she knew or she didn't. How can a woman accuse a man of rape and not have to come to trial. The Tenth District Court of Appeals compared my case to *State v. Arnold* 126 Ohio St. 3d 290 (2010), *State v. Stahl,* 111 Ohio St. 3d 186 (2006) and *State v. Muttart,* 116 Ohio St. 3d 5 (2007). In all those cases the victim was determined to be unavailable due to some kind of circumstance. In my case the victim was never determined to be unavailable. She did not come to trial cause [*sic*] she lied on the defendant. The whole trial was ILLEGAL.

5.    Appellate counsel did not raise my other assignments of error that are in the 26(B). Ineffective assistance of appeal counsel cause [*sic*] he did not bring up on appeal that the prosecutor would not drop the case even after the victim told him to drop the case that it did not happen.

On August 20, 2015, the Court of Appeals denied his motion because it was untimely.

(Doc. 7, Ex. 31-32).  Petitioner did not appeal to the Ohio Supreme Court.

## G. Federal Habeas Corpus

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254

in this Court on April 26, 2016 (Doc. 3), raising the following grounds for relief.

**GROUND ONE:** Sufficiency and Manifest Weight.

**Supporting Facts:**  Mr. Durdin's convictions for rape with sexually violent predator specification, kidnapping and having a weapon while under disability was not based on sufficient evidence and was against the manifest weight of the evidence as is not supported by the evidence required by law. The alleged victim did not testify at trial and did not provide any testimony whatsoever. There is no evidence that Mr. Durdin purposely compelled his ex-wife to submit to sexual conduct by force or threat of force and there is no testimony to prove that Mr. Durdin

purposely compelled his ex-wife to submit by force or threat of force. There is no evidence to support a having a weapon while under disability conviction. No gun was ever found, nobody testified at trial to ever say that they seen [sic] this so called gun or testified they seen [sic] Mr. Durdin with a gun. Nobody has ever seen this gun. Mr. Durdin's conviction for sexually violent predator specification is not supported by the quantum of evidence required by law and is contrary to law and is illegal. Mr. Durdin has no previous convictions for any sexual crime. The alleged victim was never determined to be unavailable for cross examination.

**GROUND TWO:** Confrontation Clause.

**Supporting Facts:** The alleged victim did not testify at trial and did not provide any testimony whatsoever. The alleged victim was never determined to be available before trial and Mr. Durdin had no prior opportunity for cross-examination. The whole trial was hearsay.

**GROUND THREE:** Ineffective assistance appellate counsel.

**Supporting Facts:** He was ineffective cause [sic] he did not even raise half of my assignments of error in my first appeal and for conflict of interest cause we got in a fight back in 2003 when he was appointed to me on a case I had then and I fired him. I wrote him multiple letters explaining the assignments of error I wanted raised but my letters were unanswered.

**GROUND FOUR:** Ineffective assistance of trial counsel.

**Supporting Facts:** Trial counsel was ineffective for not objecting to the State's presentation of only ten seconds of the recorded phone call between Mr. and Ms. Durdin. Trial counsel acted more like an auxiliary prosecutor than an advocate for Mr. Durdin. Trial counsel did not cross-examine State witnesses and those that he did, the questioning was meaningless in the context of the trial. Trial counsel was ineffective for objecting to the hearsay testimony of the alleged victim's sister Patricia Daniels. Trial counsel was ineffective for not objecting to the prosecutor when he told the jury about Mr. Durdin's previous arrest and charges for sexual crimes that were dismissed.

## II. Legal Standards

### A. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) (per curiam) (*citing Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (*quoting Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a

12

habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional

13

error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (*quoting Murray, supra*, 477 U.S. at 479. That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501

14

U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (*quoting id.*, at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " Id., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (*quoting Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (*citing Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

## B.  Merits review

15

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 ("AEDPA") govern the scope of this Court's review.  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24,(2002) (*per curiam*).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus... is on whether the state court's application of clearly established federal law is objectively unreasonable... an

16

unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (*per curiam*), *quoting Harrington v. Richter*, 562 U.S. 86, 101-103 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id., quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

In situations where the state courts have not adjudicated the merits of a claim, a federal habeas court should review a Petitioner's claim de novo. *Howard v. Bouchard*, 405 U.S. 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an 'adjudication on the merits.' Thus, a federal habeas court reviews such unaddressed claims de novo."); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (reviewing habeas Petitioner's sufficiency-of-the-evidence claim de novo where the state courts had considered the admissibility of the evidence but not the sufficiency of the evidence);

*Pennington v. Jones*, 2006 WL 322474, at *2 (E.D. Mich. Feb.10, 2006) (reviewing habeas Petitioner's claim de novo where he raised it for the first time in his petition).

Questions of state law are not reviewable in a federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted). Petitioner instead must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Accordingly, the Court of Appeals has held that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

### III.  Discussion

 Respondent argues that Petitioner's second through fourth grounds for relief have been procedurally defaulted, at least in part, and otherwise are without merit. The Court will address first these grounds for relief.

### A.  Grounds Three and Four

#### 1.    Ineffective Assistance of Appellate  Counsel

Ground three of the petition raises a claim for ineffective assistance of appellate counsel because, Petitioner asserts, counsel "did not even raise half" of the assignments of error in his first appeal.  Petitioner also states that counsel had a "conflict of interest" because Petitioner had fired him previously when he was appointed to represent him in another case in 2003.  Petitioner does not elaborate on this claim or provide specific issues that appellate counsel should have raised.  When Petitioner raised an ineffective assistance of appellate counsel claim in his memorandum to the Ohio Supreme Court, he alluded only to counsel's failure to raise the ineffective assistance of trial counsel for inadequately cross-examining witnesses and failing to object to presentation of ten seconds of a recorded phone conversation (rather than the entire conversation).

Petitioner failed to file a timely application to re-open the appeal based on Ohio App.R. 26(B), which is the normal mechanism for presenting ineffective assistance of appellate counsel claims to state courts.  *Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012).  Moreover, even if it had been timely filed, Petitioner did not raise the issue of counsel's alleged conflict of interest in his 26(B) application.  The Court of Appeals held that he did not show good cause for the untimely filing, which would be required to re-open the appeal past the deadline for filing.  (Doc. 7, Ex. 31 at 3); *Carter, supra.* Petitioner did not appeal the denial of his 26(B) motion to the Ohio Supreme Court.  It is well settled that "an untimely Rule 26(B) application is an adequate and independent state ground that results in a claim being procedurally defaulted." *Baker v. Bradshaw*, 495

19

F. App'x 560, 566 (6th Cir. 2012) (*citing Monzo v. Edwards*, 281 F.3d 568, 577–78 (6th Cir. 2002) and *Gross v. Warden*, 426 Fed.Appx. 349, 359 (6th Cir. 2011)).

Even if Petitioner could successfully argue that he preserved his ineffective assistance of appellate counsel claims, a general non-specific claim of ineffective assistance in a habeas petition is insufficient to demonstrate that the issue has been fairly presented to state courts.  As discussed above, each factual example of deficient representation must be presented before each court, and must be based on the same legal theory.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  As this Court has previously observed:

> Were the rule otherwise, a petitioner could simply make a generalized claim of ineffective assistance of counsel in state court and then raise additional instances of such conduct in a federal habeas corpus petition without facing a procedural default.  That way, the petitioner could avoid both an adverse ruling by the state court to which the federal court would owe deference under 28 U.S.C. § 2254(d), and the petitioner could bypass the state court's specific consideration of those issues and deprive the state court of the opportunity to correct its own errors without the need for federal court intervention. That would run directly counter to the rationale behind the exhaustion and fair presentation doctrines, however, which serve to 'protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'

*Teagarden v. Warden, Madison Correctional Inst.*, 2011 WL 1659372, *6 (S.D. Ohio May 3, 2011), *quoting Rose v. Lundy*, 455 U.S. 509, 517 (1982).  Petitioner has failed to preserve his claim for ineffective assistance of appellate counsel and it is therefore procedurally defaulted.

## 2.  Ineffective Assistance of Trial Counsel

Petitioner's fourth ground for relief is that trial counsel was ineffective for: (1) failing to object to the state's presentation of "only ten seconds of the recorded phone call between Mr. and Ms. Durdin;" (2) failing to adequately cross-examine state witnesses; (3) failing to object to the hearsay testimony of Patricia Daniels; and (4) failing to object to the prosecutor telling the jury about his previous charges for sexual crimes that had been dismissed.  He argues that counsel acted "more like an auxiliary prosecutor than an advocate."  Petitioner has not fairly presented these claims to the Ohio courts. He was appointed new counsel on appeal and there was no assignment of error for ineffective assistance of trial counsel raised in his appellate brief. (Doc. 7, Ex. 10).  Issues that could have been raised on direct appeal are barred from being raised later in a collateral appeal.  *See, State v. Roberts*, 1 Ohio St.3d 36, 39 (1982) (the doctrine of *res judicata* precludes a petitioner from asserting constitutional issues in a post-conviction proceeding that were not raised "at the earliest possible time.") All of these claims of ineffective assistance of trial counsel rely on matters appearing on the face of the record. Because Petitioner failed to raise the ineffective assistance of trial counsel claims in his direct appeal, they are procedurally defaulted.

## B.  Ground Two

In his second ground for relief Petitioner asserts that his Sixth Amendment right to confront witnesses against him was violated.  In support of this, he argues that "[t]he alleged victim did not testify at trial and did not provide any testimony whatsoever. The alleged victim was never determined to be available before trial and Mr. Durdin

21

had no prior opportunity for cross-examination.  The whole trial was hearsay." (Doc. 3 at 6).  Respondent asserts that this ground for relief is procedurally defaulted because to the extent that the failure of the victim to testify and the third party accounts of the victim's statements were raised in his state appeals, they were not based on the same legal or factual theory.  *See, Wong, supra,* 142 F.3d at 322 ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *see also Fautenberry v. Mitchell,* 2001 WL 1763438, *13 (S.D. Ohio Dec. 26, 2001) ("Petitioners cannot present a set of facts to the state courts under one legal theory, and then present the same facts to the federal court under a different legal theory").

On direct appeal, Petitioner argued that the trial court erred in denying his motion *in limine* and admitting into evidence the victim's statements as recounted by the SANE nurse.  Petitioner did not raise the failure of the victim to testify as an assignment of error *per se*, but only to the admission of the SANE nurse's testimony containing the victim's statements.  He argued that the trial court should not have permitted the testimonial statements of a witness who does not appear at trial unless it made a determination that the victim was unavailable to testify and the defendant was given an opportunity to cross-examine the witness. *See, Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Petitioner reasoned that because the victim was never found by the trial court to be unavailable, the testimony by other witnesses of the victim's statements should have been excluded under Ohio's evidentiary rules.

22

Petitioner did not argue that the testimony of Patricia Daniels (the victim's sister) violated the Confrontation Clause, but framed the argument as a violation of state law only, which is not cognizable in a federal habeas review. *See, Coleman v. Thompson*, 501 U.S. 722 (1991). Most significantly, however, neither the failure of the witness to testify nor the admission of the testimony of the victim's sister was raised on direct appeal. Thus, those claims are not preserved for federal review absent a showing cause for the default and actual prejudice resulting from the alleged constitutional error. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). Whether procedural default of any other claim can be excused ultimately depends on whether the claim for ineffective assistance of appellate counsel was procedurally defaulted and whether there was cause and prejudice to excuse such default. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000). In this case, Petitioner is silent as to the reasons he did not fairly present and exhaust his claims in the Ohio courts. As discussed above, Petitioner's ineffective assistance of appellate counsel claim was defaulted because he did not file a timely Rule 26(B) application. Petitioner has neither argued nor demonstrated that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In addition to being procedurally defaulted, Petitioner's second ground for relief fails on the merits. The Confrontation Clause guarantees an accused the right to cross-examine witnesses against him to examine credibility and possible biases on the part of the witness. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). "Cross-examination is the

23

principal means by which the believability of a witness and the truth of his testimony are tested ." *Id.* at 315.  The Confrontation Clause does not, however, prohibit the admission of all hearsay statements from witnesses who do not appear at trial. It bars "the admission of *testimonial* statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53-54 (emphasis added).  To determine whether a statement is testimonial, courts must consider whether it has "a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 357 (2011).  Also relevant are factors such as whether the statement was made during or immediately after the crime, in the course of assisting police in apprehending the perpetrator, or in the course of medical treatment for the purposes of treatment and diagnosis.  *See, e.g. Davis v. Washington*, 547 U.S. 813, 828 (2006) (victim's statements during 911 call were not testimonial as they were made during and immediately after the crime, and the assailant was still at large); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312, n. 2 (2009) ("[M]edical reports created for treatment purposes ... would not be testimonial...").  A statement's formality or informality is also helpful in determining whether a particular statement has a primary purpose of use at trial. *Bryant*, 562 U.S. at 366; . *See, also Davis*, 547 U.S. at 833-834 (Domestic violence victim's formal written statement in an affidavit given to a police offer was testimonial and therefore subject to the Confrontation Clause.).

24

Because the victim in Petitioner's case was not found to be unavailable and he was not given the opportunity to cross-examine her, the appropriate question is whether the hearsay statements by the victim that were admitted at trial were testimonial statements. The Supreme Court has long recognized that the Confrontation Clause is not offended by spontaneous declarations, or statements "that [have] been offered in a moment of excitement-without the opportunity to reflect on the consequences of one's exclamation." *White v. Illinois*, 502 U.S. 346, 356 (1992).  Stated in another way:

> The basis for the 'excited utterance' exception, for example, is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.

*Idaho v. Wright*, 497 U.S. 805, 820 (1990) (citations omitted) (concluding that admission of excited utterances under state hearsay exception did not violate the Confrontation Clause); *See, also, Johnson v. Wolfe*, 44 Fed.Appx. 702, 713 (6 th Cir. 2002) (admission of testimony relaying conversation with hysterical child stating that "[defendant] is going to kill [victim]" satisfied the Confrontation Clause) ; *Kowalak v. Scutt*, 712 F.Supp.2d 657 (E.D. Mich. 2010) (testimony recounting victim stated she was "petrified" and "scared to death" in a telephone call to a friend 35-40 minutes after receiving a death threat from defendant was non-testimonial).

At Petitioner's trial, Ms. Daniels, the victim's sister, testified that she was woken up by a phone call from the victim late at night, immediately after the victim had convinced Petitioner to let her drop him off at a mental health facility.  Ms. Daniels testified that the victim had called her "screaming in the phone, sobbing in the phone, just like—she was so upset, and she said [defendant]," who was the victim's ex-husband, "had raped her." (Tr. 39.) The victim told Ms. Daniels that she was on her way to the hospital because she had been "raped and duct taped" and defendant "did it." (Tr. 40–41.) The victim also told her sister that defendant "had her gun," and Ms. Daniels said her sister was "afraid" because defendant "had taken [the victim's] gun from her." (Tr. 41.).  This type of informal, excited statement by the victim is consistent with a "non-testimonial statement" which was not made in anticipation of making a statement for trial.

The SANE nurse who treated the victim after the incident also testified at Petitioner's trial, recounting the victim's statements during her treatment at the hospital.  The victim's statements to the nurse included medical information, as well as comments that she was afraid for her safety because the Petitioner had a gun.  On Petitioner's direct appeal, the court of appeals held that the trial court erred by admitting the testimony of the SANE nurse related to the victim's statements about a gun because the presence of a gun was unrelated to the victim's diagnosis and treatment.  The court of appeals held that without the gun related testimony from the SANE nurse, there was insufficient evidence to prove that Petitioner was guilty of

aggravated robbery and the gun specifications, and those convictions were reversed. The statements made by the victim in the course of her medical diagnosis and treatment, however, were properly admitted (i.e. victim's report that Petitioner restrained her, taped her mouth with duct tape, and hit her) and not testimonial for Confrontation Clause purposes. *See, Melendez-Diaz, supra.*

The Sixth Circuit Court of Appeals recently considered a case similar to Petitioner's, in which that petitioner's rape conviction largely relied on testimony from a SANE nurse based on her interaction with the victim during treatment and diagnosis following the incident. *Dorsey v. Cook*, ___Fed.Appx. ___; 2017 WL 371959 (6th Cir. Jan. 26, 2017). Affirming the District Court's denial of a habeas petition, the court noted that "[n]othing in *Crawford* or subsequent Supreme Court cases interpreting the meaning of 'testimonial,' including the cases cited by Dorsey, compels the conclusion that statements made to a sexual assault nurse examiner for both medical and legal purposes are testimonial." *Id.* at *2. This Court similarly concludes that, to the extent that the issue was properly presented, the state appellate's court denial of Petitioner's claim for relief regarding the admission of the hearsay statements by the SANE nurse and the victim's sister was neither unreasonable nor contrary to clearly established Supreme Court precedent. Because Petitioner's second ground for relief is procedurally defaulted and also lacks merit, it will be recommended that Petitioner's second ground for relief be dismissed.

**B.  Ground One- Sufficiency of the Evidence**

Petitioner's first ground for relief challenges the sufficiency of the evidence presented in support of his convictions and that the convictions (other than the domestic violence conviction, which he does not challenge) were against the manifest weight of the evidence.  First, Respondent correctly points out that the Due Process Clause protects defendants who have been convicted without sufficient proof to permit a rational fact-finder to find guilt beyond a reasonable doubt, not defendants whose convictions are against the manifest weight of the evidence. 28 U.S.C. §2254(a) *Spence v. Sheets*, 675 F.Supp.2d 792, 802 (S.D. Ohio 2009) ("The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt.") (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A claim that a finding of guilt was against the manifest weight of the evidence requires a state appellate court to act as a fact finder and review the weight of the evidence, including credibility of witnesses to ascertain whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Spence*, *supra* at 803 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175 (Hamilton Cty. 1983).

Conversely, a challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet a more deferential standard.

28

As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81–82 (S.D. Ohio Sept. 28, 2011):

> In *Jackson v. Virginia* [443 U.S. 307 (1979) ], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief 'if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' *Id*. at 324.

It is important that when reviewing a sufficiency of the evidence challenge the Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

As the Sixth Circuit Court of Appeals has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of the [*Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). In *Tucker v. Palmer*, 541 F.3d 652 (6th Cir.2008), the Court of Appeals explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656.  *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007). This Court recognizes, however, that in spite of the AEDPA, "it must distinguish reasonable speculation from sufficient evidence when reviewing a state court's application of *Jackson*." *Arthurs v. Warden, Warren Correctional Institution*, 2012 WL 995395, *9 (S.D. Ohio March 23, 2012) (internal quotations omitted).

Petitioner challenges the sufficiency of the evidence for his convictions for rape, kidnapping, the sexually violent predator specification, and possessing a weapon under a disability.  His argument rests largely on the fact that the victim did not testify at trial and was never determined to be unavailable, as well as a general statement that there was "no evidence" of the various crimes.

Petitioner's rape conviction was pursuant to O.R.C. §2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the

offender purposely compels the other person to submit by force or threat of force."

Sexual conduct includes vaginal intercourse between a male and a female and force

means "any violence, compulsion, or constraint physically exerted by any means upon

or against a person or thing." O.R.C. §2907.01(A); (O.R.C. §2901.01(A)(1).  Petitioner

argues that there is no evidence to prove that he purposely compelled his ex-wife to

engage in sexual conduct by force or threat of force.

A review of the testimony and evidence presented at trial does not support

Petitioner's argument.  The victim's sister testified that the victim had called her

"sobbing" and told her that Petitioner had raped her. (Doc. 7, Tr. at 39).  Ms. McNichol,

the SANE nurse, testified that the victim had described being raped by Petitioner, and

when she examined the victim she had abrasions to her cheek and lip, swelling to her

lip, tenderness on her neck, and abrasions and purple areas on both of her wrists.  Ms.

McNichol further testified that the abrasions on the victim's lip were  consistent with

having had duct tape ripped off of her mouth, which is what the victim told her had

happened. (Tr. 67-70). The jury was shown photos of the victim's injuries (Tr. 74-80).

The jury was presented with a recording of a phone call between the victim and

Petitioner when he was in jail in which the victim said to him "I begged you not to do

it." (Tr. 122).  Petitioner admitted that he had intercourse with the victim but claimed

that it was consensual (Tr.  173-175), but the jury apparently did not find him to be a

credible witness and found him guilty of rape.

The Court must give deference to the decision of the state appellate court, which reviewed the entire trial record in analyzing the weight of the evidence assignment of error.  The court  considered the sufficiency of evidence for the rape conviction as follows:

{ ¶ 36} To convict defendant of rape, the state was required to prove that defendant engaged in sexual conduct with the victim, purposely compelling her to submit by force or threat of force. R.C. 2907.02(A)(2). Sexual conduct includes "vaginal intercourse between a male and female." R.C. 2907.01(A). "Force" includes "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). A person acts purposely when it is their specific intention to cause a certain result, or when it is their specific intention to engage in conduct of that nature. R.C. 2901.22(A).

{ ¶ 37} The evidence demonstrates that the victim called her sister "screaming" and "sobbing" and said that defendant "had raped her." (Tr. 39.) *See* Evid.R. 803(2) (defining the "excited utterance" exception to the hearsay rule; however, in the instant action, defendant did not object to Ms. Daniels' testimony). At the hospital, the victim told the SANE nurse that defendant had hit and dragged her, tied her feet and hands with shoestrings, and duct taped her. The SANE nurse indicted that the victim had described being raped. The forensic evidence revealed that defendant's semen was present in the victim's vagina. Construing this evidence in favor of the state, there was sufficient evidence in the record to support the rape conviction.

{ ¶ 38} Defendant asserts that his rape conviction is against the manifest weight of the evidence because there was no evidence that he "purposely compelled his ex-wife to submit to sexual conduct and restrained her by force or threat of force." (Appellant's brief, 15.) "A defendant purposely compels another to submit to sexual conduct by force or a threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus.  "A threat of force can be inferred from the circumstances surrounding sexual conduct." *Id*. The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the

parties and their relation to each other. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). "As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Id.* at 59, 526 N.E.2d 304.

{ ¶ 39} Defendant asserts, citing to his own testimony, that he had engaged in consensual sexual activity with his ex-wife which included bondage, and that his ex-wife fabricated the rape allegation the following morning. However, the jury was under no obligation to believe any portion of defendant's testimony." *Raver* at ¶24. The jury was in the best position to judge defendant's demeanor and credibility, and the jury did not find defendant credible. The evidence readily demonstrates that defendant beat the victim quite severely, and that he had vaginal intercourse with the victim. This evidence, coupled with the victim's statement to her sister and the SANE nurse that defendant had raped her, allowed the jury to infer that defendant purposely compelled the victim to submit to sexual conduct by force or the threat of force. *See Jenks* at paragraph one of the syllabus (direct and circumstantial evidence have like probative values). Reviewing the record, we cannot say that the jury clearly lost its way in believing the state's evidence over defendant's testimony.

The appellate court recognized that there had been sufficient evidence of each of the elements required to show rape: that the victim had been physically restrained and injured, that sexual conduct had occurred and it was not consensual.

Petitioner also challenges the sufficiency of the evidence for his kidnapping conviction. A kidnapping conviction requires a finding that the defendant, "by force, threat, or deception.... restrain the liberty of the other person" with a purpose to "terrorize, or to inflict serious physical harm on the victim or another..." O.R.C. §2905.01(A)(3). Much of the evidence of kidnapping overlaps with the testimony discussed above with respect to the victim's being restrained during the rape with duct tape and shoelaces. The investigating officer who went to the scene of the crime (the

victim's apartment) testified that he located shoes that had their laces removed, and found shoelaces and duct tape discarded in a trash can.  These items were submitted as evidence at the trial. (Tr. 108-112).  A rational finder of fact could have found Petitioner guilty of kidnapping.

The Court of appeals found as follows:

{¶ 40} To convict defendant of kidnapping, the state was required to prove that defendant, by force, threat, or deception, restrained the victim's liberty with the purpose to terrorize her, inflict serious physical harm on her, and/or engage in sexual activity with her against her will. *See* R.C. 2905.01(A)(3) and (4). Sexual activity includes sexual conduct. *See* R.C. 2907.01(C). Restraint of liberty means " 'to limit one's freedom of movement in any fashion for any period of time.' " *State v. Martin*, 10th Dist. No. 02AP–33, 2002–Ohio–4769, ¶ 32, quoting *State v. Wingfield*, 8th Dist. No. 69229 (Mar. 7, 1996). *See also State v. Davis*, 116 Ohio St.3d 404, 880 N.E.2d 31, 2008–Ohio–2, ¶ 197, quoting *State v. Powell*, 49 Ohio St.3d 255, 262, 552 N.E.2d 191 (1990) (Emphasis sic) (noting that " 'R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of non-consensual sexual activity—not that sexual activity actually take place ' ").

{¶ 41} The victim told her sister that defendant had raped her. The victim told the SANE nurse that defendant had tied her hands and feet with shoestrings, untied her and raped her, and then duct taped her hands, legs, and mouth. Construing this evidence in the state's favor, there was sufficient evidence to support the finding that defendant restrained the victim's liberty with the purpose to engage in sexual activity with her against her will when he tied her hands and feet with shoestrings before he raped her. The jury did not lose its way in convicting defendant of kidnapping.

(Doc 7, Ex. 15).  This Court finds that there was sufficient evidence for a rational jury to convict Petitioner of kidnapping.

34

Next, Petitioner challenges his conviction for the sexually violent predator specification because there was insufficient evidence to support the specification and he had never previously been convicted of a sexual crime. Respondent suggests that a challenge to a prisoner's conviction for a sexually violent predator specification is not cognizable in a federal habeas corpus review. *See Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002). However, that was not what the *Leslie* court held. In that case, the court considered whether a habeas petition was the proper mechanism by which to challenge the constitutionality of Ohio's statute requiring individuals convicted of certain crimes to register as sexual predators. *Id.* The Court held that because the statute on its own did not restrain the petitioner's liberty, but simply required him to register, it did not meet the "in custody prerequisite for habeas corpus review." *Id.* at 522.

"Sexually violent predator means a person who...commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." O.R.C. 2971.01(H)(1). Petitioner's argument that he must have a prior conviction of a sexual offense to be convicted of the specification is misplaced. This Court recently observed that the Ohio legislature specifically stated the purpose of the most recent change to the statute was "to clarify that the Sexually Violent Predator Sentencing Law does not require that an offender have a prior conviction of a sexually violent offense in order to be sentenced under that law." *Wagers v. Warden, Lebanon Correctional Inst.*, 2013 WL 427391, *17 (S.D. Ohio Feb. 4, 2013) (*quoting* 2004 Ohio Laws File 163 (Am.Sub.H.B.473) (internal quotations omitted)); *see also State v. Taylor*, 2014 WL

35

3537829 (Cuyahoga Cty. App. July 17, 2014).   In this case, the jury was presented with evidence that Petitioner had previously been convicted of felony robbery and of domestic violence involving the victim.  The evidence at trial demonstrated that Petitioner had engaged in violent sexual conduct towards the victim.  Because a prior conviction for a sexual crime is not an element of the sexually violent predator specification, the evidence presented at trial may have been enough to convict Petitioner of the specification on its own.

The appellate court also reviewed the evidence and found it sufficient for a jury to have convicted Petitioner of the specification:

> { ¶ 42} Regarding the sexually violent predator specification, R.C. 2971.01 provides that a "'[s]exually violent predator' means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.. R.C. 2971.01(H)(1). A sexually violent predator specification must be charged in an "indictment, count in the indictment, or information charging the violent sex offense." R.C. 2941.148(A). See also *State v. Taylor*, 8th Dist. No. 100315, 2014–Ohio–3134, ¶ 67 (noting that R.C. 2907.01(H)(1) thus allows "for the inclusion of a sexually violent predator specification in the indictment of one being charged for the first time with a sexually violent offense"). Rape is a sexually violent offense.

> { ¶ 43} The facts of the case support the jury's finding that defendant was a sexually violent predator. Defendant beat his ex-wife, tied her up with shoestrings, raped her, and then duct taped her. Defendant had a prior domestic violence conviction against this same victim, and a prior robbery conviction from 2004. Defendant admitted that the "accusation" in the 2004 case was "that [he] tied up a woman." (Tr. 180.) The prosecutor noted that defendant was also charged with rape in the 2004 case, based on the allegation that he had "forced sex with" the woman he tied up, but defendant denied that allegation. (Tr. 180.) In the 2004 action, defendant pled guilty to the robbery charge and the court dismissed the remaining charges. Based on defendant's prior history and the egregiousness of the

> rape in the instant action, we cannot conclude that defendant is not likely to commit future sexually violent offenses. *See* R.C. 2971.01(H)(2). The jury did not lose its way in designating defendant as a sexually violent predator.

(Doc. 7, Ex. 15).  Taking into consideration the Court of Appeals' determination that the specification may be applied to a defendant who has no prior convictions for sexual crimes, this Court must defer to the state court's interpretations of state laws. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Moreover, there is no constitutional violation because there was sufficient evidence for a rational jury to convict Petitioner of the violent sexual predator specification.

Finally, Petitioner challenges the sufficiency of the evidence to convict him of possessing a firearm under a disability.  Petitioner's prior felony conviction meant that he was "under a disability" and therefore he was prohibited from knowingly acquiring, having, carrying or using any firearm. O.R.C. §2923.13(A)(2).  However, Petitioner argues that there was insufficient evidence to convict him because no gun was ever found and no one testified that he or she actually saw a gun.  The victim's sister testified that during her sister's frantic phone call to tell her about the rape, the victim said she was "afraid that [Petitioner] had her gun, had taken the gun from her." (Tr. 41).  In reversing Petitioner's conviction for the gun specifications on the charges and aggravated robbery charge.  The state court of appeals stated:

> { ¶ 44} Having a weapon while under disability, in violation of R.C. 2923.13(A)(2), provides that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is * * * convicted of any felony offense of violence." R.C. 2923.13(A)(2). A firearm

is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," and includes an "unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). The victim told her sister that defendant "had her gun," and the parties stipulated to defendant's robbery conviction from 2004, which was a felony offense of violence. (Tr. 41.) This evidence was sufficient to support the having a weapon while under disability charge, and we cannot say that the jury clearly lost its way in convicting defendant of the having a weapon while under disability charge.

\* \* \*

{¶ 49} Thus, while there is testimony from which a jury could conclude that a gun owned by the victim was taken by defendant, the admissible testimony regarding the gun fails to establish that defendant used the gun in a manner which would support the elements of aggravated robbery or the three-year firearm specification attached to the aggravated robbery charge. *See* R.C. 2911.01 and 2941.145. Accordingly, the record does not contain sufficient evidence to support defendant's conviction for aggravated robbery or the firearm specification attached to that charge. As the trial court erred in admitting the SANE nurse's statement regarding the presence of a gun during the rape offense, and the SANE nurse's testimony was the only evidence in the record indicating that defendant possessed a firearm during the rape, the record also does not contain sufficient evidence to support the firearm specification attached to the rape charge.

{¶ 50} While we find that sufficient evidence and the manifest weight of the evidence support defendant's convictions for having a weapon while under disability, rape, kidnapping, and the sexually violent predator specification, we find that the record does not contain sufficient evidence to support the aggravated robbery conviction or the firearm specifications attached to the aggravated robbery charge or the rape charge. Based on the foregoing, defendant's first assignment of error is sustained in part and overruled in part.

With respect to the insufficiency of evidence to support the convictions for rape,

kidnapping, sexual predator specification, and possessing a weapon under a disability,

the state appellate court's decision did not involve an unreasonable application of

38

clearly established federal law as determined by the Supreme Court.  *See* 28 U.S.C. §
2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13.  Petitioner has also not succeeded in
rebutting the presumption that the state court's factual findings were correct. *See* 28
U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.1998).  Petitioner's first
ground for relief is without merit.

## IV.  Conclusion

For the foregoing reasons, it is **RECOMMENDED** that the petition for a writ of
habeas corpus be **DENIED** and that this case be **DISMISSED**.

## V.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within
fourteen days of the date of this Report, file and serve on all parties written objections to
those specific proposed findings or recommendations to which objection is made,
together with supporting authority for the objection(s).  A judge of this Court shall
make a <u>de</u> <u>novo</u> determination of those portions of the report or specified proposed
findings or recommendations to which objection is made.  Upon proper objections, a
judge of this Court may accept, reject, or modify ,   in whole or in part, the findings or
recommendations made herein, may receive further evidence or may recommit this
matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and
Recommendation will result in a waiver of the right to have the district judge review
the Report and Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to

appeal the decision of the District Court adopting the Report and Recommendation.

See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th

Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge

40